**No. 22-3283**

_____

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

SHH HOLDINGS, LLC,

*Plaintiff-Appellee*,

v.

ALLIED WORLD SPECIALTY INSURANCE COMPANY,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the Northern District of Ohio, Eastern Division
No. 1:19-cv-02900

_____

## PRINCIPAL BRIEF OF DEFENDANT-APPELLANT
## ALLIED WORLD SPECIALTY INSURANCE COMPANY

_____

Charles W. Chotvacs
Dykema Gossett, PLLC
1301 K Street, N.W., Ste. 1100 W.
Washington, D.C.  20005
Telephone: (202) 906-8600
CChotvacs@dykema.com

Monica A. Sansalone
Gallagher Sharp LLP
1215 Superior Avenue, 7th Fl.
Cleveland, OH  44114
Telephone: (216) 241-5310
msansalone@gallaghersharp.com

*Counsel for Defendant-Appellant*
*Allied World Specialty Insurance Company*

## ORAL ARGUMENT REQUESTED

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and Sixth Circuit Rule 26.1, Defendant-Appellant Allied World Specialty Insurance Company certifies that it is 100% owned by AW Underwriters, Inc., which is 100% owned by Allied World Insurance Company, which is 100% owned by Allied World Assurance Holdings (U.S.) Inc., which is 100% owned by Allied World Assurance Holdings (Ireland) Ltd., which is 100% owned by Allied World Assurance Company, Ltd., which is 100% owned by Allied World Assurance Company Holdings I, Ltd., which is 100% owned by Allied World Assurance Company Holdings, Ltd., which is approximately 70% owned by 1102952 B.C. Unlimited Liability Company, a Canadian Company, and approximately 20% owned by OCM Goldfish, Inc., a Canadian Company, and various minority investors.  1102952 B.C. Unlimited Liability Company is 100% owned by Fairfax Financial Holdings Limited, a Canadian company publicly traded on the Toronto stock exchange.

# TABLE OF CONTENTS

**PAGE(S)**

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ..........................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ..................................1

JURISDICTIONAL STATEMENT ..........................................................2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................4

STATEMENT OF THE CASE ..................................................................5

I.      Nature of the Case ..................................................................5

II.     Statement of Facts..................................................................7

    A.      The Qui Tam Action..................................................................7

    B.      The Civil Investigative Demand and DOJ Investigation .....................9

    C.      SHH's Application for Insurance to Allied World .............................11

    D.      The Allied World Policy .............................................................14

    E.      SHH's Settlements with the Government and Relators .....................17

III.    Procedural History ...............................................................18

IV.     Rulings on Appeal ................................................................20

SUMMARY OF THE ARGUMENT ..........................................................21

ARGUMENT ..........................................................................................24

I.      The District Court's Erroneous Determination that
Coverage Exists for the Qui Tam Action ......................................24

    A.      Standard of Review .................................................................24

    B.      The Application Exclusion Bars All Coverage
for the Qui Tam Action and the District Court Erred
in Holding Otherwise ................................................................26

        1.      The CID and DOJ Investigation Was Responsive to the
Application Questions...............................................................26

        2.      The District Court's Interpretation of the Application
Questions Was Not Reasonable ................................................29

3.      The Application Exclusion Precludes Coverage
for the Qui Tam Action..............................................34

II.    The District Court's Erroneous Award of SHH's Coverage Action
Fees ..................................................................................................37

A.      Standard of Review ................................................................37

B.      Ohio Law Does Not Permit a Fee Award to SHH ..............38

CONCLUSION AND RELIEF SOUGHT ...............................................42

CERTIFICATE OF COMPLIANCE.........................................................44

CERTIFICATE OF SERVICE ..................................................................45

ADDENDUM ...............................................................................................46

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                    **PAGE(S)**

*Alterra Excess & Surplus Ins. Co. v. Gotama Bldg. Eng'rs, Inc.*,
No. CV 14-2969-JFW (ASx), 2014 U.S. Dist. LEXIS 110416
(C.D. Cal. July 24, 2014) ................................................................... 35

*B-T Dissolution, Inc. v. Provident Life & Accident Ins. Co.*,
192 F. App'x 444 (6th Cir. 2006) ...................................................... 39

*Bank One, N.A. v. Echo Acceptance Corp.*,
380 F. App'x 513 (6th Cir. 2010) ...................................................... 41

*Cincinnati Gas & Elec. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*,
No. 1:06-CV-00331, 2008 U.S. Dist. LEXIS 29569
(S.D. Ohio Apr. 9, 2008) .................................................................. 25

*Excellence in Motivation v. Navigators Ins. Co.*,
No. 3:10-cv-420, 2011 U.S. Dist. LEXIS 172415
(S.D. Ohio Oct. 17, 2011) ................................................................ 40

*First Bank v. Hartford Underwriters Ins. Co.*,
307 F.3d 501 (6th Cir. 2002) ............................................................ 38

*Gluck v. Exec. Risk Indem., Inc.*,
680 F. Supp. 2d 406 (E.D.N.Y. 2010) .............................................. 35

*Hale v. Travelers Cas. & Sur. Co. of Am.*,
No. 3-14-1987, 2015 U.S. Dist. LEXIS 149687
(M.D. Tenn. Nov. 4, 2015) ................................................................ 35

*Hometown Folks, L.L.C. v. S & B Wilson, Inc.*,
643 F.3d 520 (6th Cir. 2011) ............................................................ 37

*HR Acq. I Corp. v. Twin City Fire Ins. Co.*,
547 F.3d 1309 (11th Cir. 2008) ........................................................ 36

*JNJ Logistics, L.L.C. v. Scottsdale Ins. Co.*,
617 F. App'x 464 (6th Cir. 2015) ...................................................... 24

*KitBar Enters., L.L.C. v. Liberty Ins. Underwriters, Inc.*,
291 F. Supp. 3d 758 (E.D. Va. 2018) ................................................ 36

iv

*Lawler v. Fireman's Fund Ins. Co.*,
    322 F.3d 900 (6th Cir. 2003) ............................................................ 38

*Longaberger Co. v. U.S. Fid. & Guar. Co.*,
    31 F. Supp. 2d 595 (S.D. Ohio 1998) ............................................. 32

*McCarty v. Nat'l Union Fire Ins. Co.*,
    699 F. App'x 464 (6th Cir. 2017) .................................................... 25

*Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co.*,
    691 F.3d 821 (6th Cir. 2012) .......................................................... 24

*Scott Fetzer Co. v. Zurich Am. Ins. Co.*,
    No. 1:16 CV 1570, 2021 U.S. Dist. LEXIS 55961
    (N.D. Ohio Mar. 24, 2021) ....................................................... 40-41

*Surles v. Andison*,
    678 F.3d 452 (6th Cir. 2012) .......................................................... 24

*Thomas Noe, Inc. v. Homestead Ins. Co.*,
    173 F.3d 581 (6th Cir. 1999) ...................................................... 31-32

*Toledo-Lucas Cnty. Port Auth. v. Axa Marine & Aviation Ins.*,
    368 F.3d 524 (6th Cir. 2004) .......................................................... 25

*Upper Deck Co. v. Endurance Am. Specialty Ins. Co.*,
    No. 10cv1032, 2011 U.S. Dist. LEXIS 148668
    (S.D. Cal. Dec. 15, 2011) ............................................................... 35

*US HF Cellular Commc'ns, L.L.C. v. Scottsdale Ins. Co.*,
    776 F. App'x 275 (6th Cir. 2019) ....................................... 30-31, 35

*Yellowbook Inc. v. Brandeberry*,
    708 F.3d 837 (6th Cir. 2013) .......................................................... 25

## STATE CASES

*Allen v. Standard Oil Co.*,
    443 N.E.2d 497 (Ohio 1982) ........................................................... 39

*Allstate Ins. Co. v. Eyster*,
    939 N.E.2d 1274 (Ohio Ct. App. 2010) .......................................... 24

*AmerisourceBergen Corp. v. Ace Am. Ins. Co.*,
    100 A.3d 283 (Pa. Super. Ct. 2014) ........................................................... 36-37

*Crown Capital Secs., L.P. v. Endurance Am. Specialty Ins. Co.*,
    186 Cal. Rptr. 3d 1 (2015) ...................................................................... 35

*Erie Ins. Exch. v. Colony Dev. Corp.*,
    736 N.E.2d 941 (Ohio Ct. App. 1999) .......................................................... 42

*Gray v. Zurich Ins. Co.*,
    419 P.2d 168 (Cal. 1966) ........................................................................ 42

*Guernsey Bank v. Milano Sports Enters., L.L.C.*,
    2011-Ohio-2162 (Ohio Ct. App. 2011) .......................................................... 38

*Lager v. Miller-Gonzalez*,
    896 N.E.2d 666 (Ohio 2008) .............................................................. 24-25, 32

*Motorists Mut. Ins. Co. v. Trainor*,
    294 N.E.2d 874 (Ohio 1973) ............................................................... 39, 42

*Pasco v. State Auto. Mut. Ins. Co.*,
    2005-Ohio-2387 (Ohio Ct. App. 2005) .......................................................... 39

*Sanderson v. Ohio Edison Co.*,
    635 N.E.2d 19 (Ohio 1994) .................................................................... 42

*Westfield Ins. Co. v. Galatis*,
    797 N.E.2d 1256 (Ohio 2003) ............................................................ 25-26, 27

*Worth v. Aetna Cas. & Sur. Co.*,
    513 N.E.2d 253 (Ohio 1987) .................................................................. 40

## STATUTES

28 U.S.C. § 1291 ................................................................................ 2, 3
28 U.S.C. § 1332 .................................................................................. 2
31 U.S.C. § 3729 ........................................................................... *passim*

## RULES

Fed. R. App. P. 4(a)(1)(A), (a)(7)(A) ........................................................... 3, 4
Fed. R. App. P. 26.1(a) ........................................................................... i

Fed. R. App. P. 32(a)(7)(B)(i) ................................................................. 44

Fed. R. App. P. 34(a) ............................................................................. 1

6 Cir. R. 26.1 .......................................................................................... i

6 Cir. R. 28(b)(1)(A)(i) ......................................................................... 46

6 Cir. R. 30(g)(1) .................................................................................. 46

6 Cir. R. 34(a) ........................................................................................ 1

Fed. R. Civ. P. 3 .................................................................................... 36

Fed. R. Civ. P. 56(a) ............................................................................. 24

Fed. R. Civ. P. 58(a), (c) ........................................................................ 3

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Allied World Specialty Insurance Company ("Allied World") respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Sixth Circuit Rule 34(a) to address any questions unanswered by the briefs and record, and to otherwise assist the Court with its decision-making process in this insurance coverage action.

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of Ohio had subject-matter jurisdiction over this matter under 28 U.S.C. § 1332.  Plaintiff-Appellee SHH Holdings, LLC ("SHH") and Defendant-Appellant Allied World Specialty Insurance Company ("Allied World") are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  (Complaint, RE 1, Page ID # 2 ¶¶ 5–8; Answer, RE 8, Page ID # 4 ¶¶ 5–8).

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.  On November 2, 2020, the District Court issued an Opinion & Order on the parties' cross-motions for summary judgment, finding that the policy at issue provided coverage for the claim and entering summary judgment for SHH on its breach of contract and declaratory judgment counts, while finding in Allied World's favor on SHH's bad faith count.  (Opinion & Order, RE 46, Page ID # 1671–1685).  On December 16, 2020, the District Court issued an amended Opinion & Order, which was identical to its prior ruling but clarified a footnote.  (Opinion & Order, RE 48, Page ID #1691–1705).  The District Court directed the parties to confer and notify the Court of any outstanding issues.  (Docket Text, RE 48).

On January 29, 2021, the parties filed a Notice of Outstanding Issues and Request for Briefing and Hearing as directed.  (Notice of Outstanding Issues, RE 49, Page ID # 1706–1709).  The parties identified four damages issues that were still

2

outstanding and required the District Court's consideration. (*Id.*, Page ID # 1706–1707). "[T]he Parties request[ed] that the Court set a briefing schedule and, if necessary, a damages hearing so that the Parties may present these issues and the Court may then enter a final order and judgment resolving all of the outstanding issues in this case." (*Id.*, Page ID # 1707). The Court thereafter set a briefing schedule for damage determination. (Docket Text, dated Feb. 2, 2021).

On September 28, 2021, the District Court entered its Opinion & Order on certain of the disputed damages issues, but did not determine the overall amount of the award. (Opinion & Order, RE 54, Page ID # 1792–1801). On October 8, 2021, following additional submissions by the parties, the District Court entered an Opinion & Order fixing the amount of damages and awarding SHH its fees for bringing the coverage action. (Opinion & Order, RE 56, Page ID # 1945).

The Opinions & Orders being appealed did not become final within the meaning of 28 U.S.C. § 1291 until the outstanding damages issues were finally resolved by the District Court's October 8, 2021 Opinion & Order. However, the District Court never issued a separate final judgment as required under Fed. R. Civ. P. 58(a). Because the District Court failed to set forth its judgment in a separate document as required by Fed. R. Civ. P. 58(a), the judgment was not deemed entered until 150 days after October 8, 2021. *See* Fed. R. Civ. P. 58(c); Fed. R. App. P. 4(a)(7)(A). That period expired on March 7, 2022. Allied World then had 30 days

to file its notice of appeal, which would have expired on April 6, 2022. *See* Fed. R. App. P. 4(a)(1)(A). On March 25, 2022, Allied World filed its notice of appeal with the District Court. (Notice of Appeal, RE 57, Page ID # 1946–1948). Because Allied World's notice of appeal was filed within 30 days of judgment being deemed entered, it is timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

<u>Issue No. 1</u>: Whether the exclusion in the insurance application SHH submitted to Allied World for the subject insurance policy, which bars coverage for prior or existing inquiries, investigations, claims, or lawsuits as well as such matters arising therefrom, precludes all coverage under the policy for the Qui Tam action brought against SHH, where, at the time the application was submitted, that Qui Tam action was pending and SHH was aware of a civil investigative demand and government investigation into the Qui Tam action's allegations.

<u>Issue No. 2</u>: Whether SHH is entitled under Ohio law to an award of its attorneys' fees incurred in connection with its coverage action against Allied World as damages even though no exception to the American Rule is applicable.

## STATEMENT OF THE CASE

### I.    Nature of the Case

This action involves an insurance coverage dispute arising from a federal Qui Tam action filed under seal in November 2016 against two of Plaintiff-Appellee SHH Holdings, LLC's subsidiaries—Saber Healthcare Holdings and Saber Healthcare Group (collectively, "SHH").   The relators, three former employees, alleged that SHH and its affiliates submitted false claims to the government for unnecessary rehabilitation therapy at their nursing facilities and that SHH retaliated against the relators when they voiced concern over SHH's billing practices. Although the Qui Tam action was initially filed under seal, the government issued a civil investigation demand (CID) to SHH in January 2017, informing SHH that the government was undertaking a False Claims Act investigation of SHH of the very allegations of improper billing alleged in the Qui Tam action.  In the months to come, SHH responded to the government's investigative demands for documents and information, and worked with the government such that, by August 2019, it had reached a settlement in principle regarding the improper billing practices.  Thus, in April 2019, when Saber applied for first-time coverage with Allied World, the Qui Tam Action was pending, SHH was aware of the CID and the government's investigation, and SHH was aware that legal liability could follow therefrom.  Yet,

SHH failed to disclose the CID and the government's investigation in its insurance application, which required SHH to disclose such information.

SHH seeks insurance coverage from Allied World for its settlement with the relators of the retaliation component of the Qui Tam action and defense expenses incurred in connection therewith. However, there is no coverage for such amounts. The insurance application (which is incorporated into the policy) SHH submitted to Allied World contains an express exclusion that bars coverage, *inter alia*, for existing inquiries, investigations, claims, or lawsuits (whether disclosed or not), as well as any such matters arising therefrom. This application exclusion precludes all coverage under the policy for the loss SHH incurred in connection with the Qui Tam action.

The District Court failed to apply the exclusion as written and erroneously held that the policy provided coverage for the Qui Tam losses at issue. In so doing, the District Court failed to apply the plain language of the application questions and exclusion and created coverage for a pre-existing dispute, which is inimical to the concept of insurance generally and claims-made insurance in particular. The District Court also erroneously determined that SHH was entitled to the fees it incurred in prosecuting this coverage action, even though the limited exceptions to the American Rule relied upon by SHH do not apply here, where the policy at issue does not

include a duty to defend or otherwise provide for the shifting of fees incurred in this coverage action.

## II.   Statement of Facts

### A.   The Qui Tam Action

On November 1, 2016, a False Claims Act lawsuit was filed under seal in the U.S. District Court for the Eastern District of Virginia, captioned *United States of America, ex rel Hope Wright, et al. v. Saber Healthcare Holdings, LLC, et al.*, Case No. 2:16-cv-640 (the "Qui Tam Action").  (Joint Stipulation of Facts ("JSF"), RE 39, Page ID # 1203, ¶ 1; Joint Exhibit ("JE") 1, Qui Tam Compl., RE 44, Page ID # 1229–1333).  The Qui Tam Action named as defendants Saber Healthcare Holdings, LLC and Saber Healthcare Group, LLC (collectively with SHH Holdings, LLC, "SHH"); Autumn Corporation ("Autumn"), a SHH subsidiary; and a number of skilled nursing facilities, which were allegedly owned by or contracted with SHH to provide rehabilitation therapy services.  (JSF, RE 39, Page ID # 1203, ¶ 1).  The Qui Tam Action was brought by three co-relators: Hope Wright, a regional manager for SHH; Laura Webb, a rehab director for SHH; and Deborah Edmonds, a director of rehab operations for Autumn (the "Relators").  (*Id.*; JE 1, Qui Tam Compl., RE 44, Page ID # 1238, ¶ 16, # 1239, ¶¶ 21 & 25).

The Qui Tam Action generally alleged that defendants defrauded the government through the submission of false and fraudulent claims related to

payment for therapy services in skilled nursing facilities to Medicare and other federal health care programs for therapy services that were unreasonable or unnecessary. (JSF, RE 39, Page ID # 1203, ¶ 1). According to the Qui Tam Complaint, defendants provided therapy services to patients that were unrelated to their individual medical needs, but rather scheduled for the purpose of obtaining the highest levels of Medicare reimbursement allowed. (*Id.*). Defendants' alleged scheme purportedly dated back to at least 2011 and caused the government over $171.5 million in damages. (JE 1, Qui Tam Compl., RE 44, Page ID # 1233, ¶¶ 3–4). As to the Relators, the Qui Tam Complaint alleged that Wright experienced a reduction in force from her position, that Webb was constructively discharged, and that Edmonds was terminated, all in retaliation for non-compliance with company policies harmful to patients. (JSF, RE 39, Page ID # 1203–1204, ¶ 1).

The Qui Tam Complaint asserted four counts for violations of the False Claims Act ("FCA"). (JSF, RE 39, Page ID # 1204, ¶ 1). Counts 1–3 were asserted against all defendants arising from their claims submission practices (the "FCA Counts"). (*Id.*). Count 4 was asserted against SHH only and alleged that the Relators were retaliated against for engaging in protected activities (i.e., reporting SHH's FCA violations) in violation of the FCA's anti-retaliation provision (the "Retaliation Count"). (*Id.*). As required by the FCA, the Qui Tam Complaint was filed under seal and the Relators submitted a pre-filing disclosure statement to the U.S.

8

Government containing evidence and information in their possession pertaining to the allegations pled against SHH and the other defendants. (JE 1, Qui Tam Compl., RE 44, Page ID # 1229, 1237, ¶¶ 13–14). This all preceded SHH's submission of its application for insurance.

## B.     The Civil Investigative Demand and DOJ Investigation

A little over two months after the filing of the Qui Tam Action, still before SHH's submission of its application for insurance, the U.S. Department of Justice (the "DOJ") took action. On or about January 20, 2017, SHH received a Civil Investigative Demand ("CID") from the DOJ. (JSF, RE 39, Page ID # 1204, ¶ 2; JE 2, CID, RE 44, Page ID # 1335–1361). The CID stated that it was being issued "in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729" (the "DOJ Investigation"), concerning allegations that SHH and/or its affiliates "caused the submission of false claims for rehabilitation therapy that was not medically reasonable or necessary, not skilled, or not actually provided." (JSF, RE 39, Page ID # 1204, ¶ 2). The CID required SHH to respond to 15 document requests and to answer 15 interrogatories. (*Id.*). Among other things requested were documents and information concerning terminations of former employees during the relevant time period, including the Relators. (*Id.*; JE 3, SHH's Discovery Responses, Resp. to RFAs 2–5, RE 44, Page ID # 1382–1385).

In the months following, SHH made rolling productions and provided responses to interrogatories, with SHH issuing its final responses to the CID on July 17, 2017, which were sworn to and verified by eight SHH officers, including three Vice Presidents, the General Counsel, the COO, and the CFO.  (JSF, RE 39, Page ID # 1204, ¶ 3; JE 4, SHH's Responses to CID, RE 44, Page ID # 1391–1412). As such, the CID and DOJ Investigation was known throughout the highest echelons of SHH.  Further, as early as May 2018, still before SHH's submission of its application for insurance, SHH financials (dated May 30, 2018) reveal that it was aware the CID could lead to liability:

> In January 2017, the Company received a Civil Investigative Demand (the "CID") from the United States Department of Justice (the "DOJ") regarding an investigation to determine whether there is or has been a violation of the False Claims Act, 31 U.S.C. §3729, for the submission of false claims for rehabilitation therapy that was not medically reasonable or necessary, not skilled, or not actually provided.  The CID requires the Company to provide documents and answers to the interrogatories of the DOJ.  The Company is in the process of providing the requested documents and answers to the DOJ's interrogatories. Although Company management believes an accrual for any potential liability in its combined financial statements is not necessary, the ultimate liability may be in excess of management's estimate.  These estimates are subject to potential revisions and those revisions *may be material*.

(JE 6, SHH's Financial Statements, RE 44, Page ID # 1458, § 13 (emphasis added)). After responding to the CID, by August 2019, SHH had reached a settlement in principle with the government regarding the improper billing practices component of the Qui Tam Action, for which SHH would eventually pay $10 million to settle

(discussed *infra*).  (JSF, RE 39, Page ID # 1205, ¶¶ 9–10 & 18).  The Retaliation Count was not resolved by that settlement.

### C.   SHH's Application for Insurance to Allied World

In connection with applying for first-time coverage with Allied World and procurement of the Policy, SHH submitted to Allied World a new business application (the "Application") dated April 15, 2019.  (JSF, RE 39, Page ID # 1204 at ¶ 4; JE 5, App., RE 44, Page ID # 1414–1428).[1]  Pursuant to the Application, SHH requested Directors & Officers Liability (D&O), Employment Practices Liability (EPL), and Fiduciary Liability (FL) Coverage with a shared $3 million limit of liability.  (JSF, RE 39, Page ID # 1204 at ¶ 4; JE 5, App., RE 44, Page ID # 1414).  SHH is a sophisticated purchaser of insurance, and during the application process, SHH was represented by experienced retail and wholesale insurance brokers.  (JSF, RE 39, Page ID # 1204, ¶ 7).

The Application contains a Claims Information section.  (JE 5, App., RE 44, Page ID # 1415–1416).  Question No. 1 of that section asked the following:

> On a separate attachment, please provide full details of all inquiries, investigations, administrative charges, claims and lawsuits filed within the last three (3) years against the Applicant, any Subsidiary, any Executive or other entity proposed for any coverage for which the Applicant is applying.  If claims have been filed, please attach complete details regarding those matters including current status of claim and ultimate resolution of claim if applicable.

---

[1] The Application SHH submitted to Allied World was on an application form for Hiscox, not Allied World's own application form, though Allied World accepted it.

11

(*Id.*, Page ID # 1415).  SHH checked "none" in response to Question No. 1.  (*Id.*).

Question No. 2 of the Claims Information section asked the following:

Does the Applicant, any Subsidiary, any Executive or other entity proposed for coverage know of any act, error or omission which could give rise to a claim, suit or action under any coverage part of the proposed policy?

(*Id.*, Page ID # 1416).  SHH checked "no" in response to Question No. 2.  (*Id.*).

However, it is undisputed that, as of the date of the Application (April 15, 2019):

- SHH was aware of the CID and DOJ Investigation and had been aware of them since January 2017, (JSF, RE 39, Page ID # 1204, ¶ 6);

- SHH was aware that the CID and DOJ Investigation could result in material losses, (JE 6, SHH's Financial Statements, RE 44, Page ID # 1458, § 13);

- SHH had been working with the government on an on-going basis regarding the improper billing practices and, within four months of submitting the Application, reached a settlement in principle concerning those practices, (JSF, RE 39, Page ID # 1205, ¶¶ 9–10); and that

- the Qui Tam Action was pending, under seal, in the Eastern District of Virginia, (JE 1, Qui Tam Compl., RE 44, Page ID # 1229).

12

Based on the foregoing, the CID and DOJ Investigation as well as the Qui Tam Action itself were responsive to Questions Nos. 1 and 2 of the Claims Information Section (the "Application Questions").

The Claims Information section concludes by providing the following exclusionary language that is at the heart of this coverage action:

> It is agreed that with respect to questions 1 through 3 of the claims Information section of this Application, if such inquiry(ies), investigation(s), administrative charge(s), claim(s), lawsuit(s), information or involvement exists, then such inquiry(ies), investigation(s), administrative charge(s), claim(s), lawsuit(s) and any inquiry, investigation, administrative charge, claim or lawsuit arising therefrom or arising from such violation, knowledge, information or involvement is excluded from the proposed coverage.

(JE 5, App., RE 39, Page ID # 1416 (the aforementioned "Application Exclusion")).

Additionally, the Application itself highlights that the Application Exclusion applies whether or not SHH actually disclosed information responsive to the Application Questions:

> [T]he Applicant understands and agrees that ***if any fact, circumstance or situation exists, <u>whether or not disclosed in this application</u>,*** any claim or action arising from any such fact, circumstance or situation may be excluded from coverage under the proposed policy, if issued by the insurer.

(*Id.*, Page ID # 1424 (emphasis added)).  The Application Exclusion applies because the Qui Tam Action existed at the time the Application was submitted and further because, once unsealed, it arises from the CID and DOJ Investigation, which also pre-date SHH's submission of the Application.

13

### D.     The Allied World Policy

Allied World issued Forcefield Healthcare Organizations Management Liability Package Policy No. 0311-8013 (the "Policy"), to SHH for the claims-made Policy Period effective April 17, 2019 to April 17, 2020.  (JSF, RE 39, Page ID # 1204 at ¶ 8; JE 7, Policy, RE 44, Page ID # 1490–1586).[2]  The Policy was new; it was not a renewal of a prior Allied World policy.  (JE 7, Policy, Re 44, Page ID # 1495).  The Policy specifies in a number of places that the Application[3] is "deemed to be attached to, incorporated into, and made a part of this Policy."  (*Id.*, Page ID # 1536, 1545, 1563, 1575).

As requested by SHH, the Policy includes EPL, D&O, and FL Coverage Sections.  (JE 7, Policy, Re 44, Page ID # 1496).  First, relevant here, Insuring Agreement A of the EPL Coverage Section provides Employment Practices Liability Coverage as follows:

> The **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim**, first made during the **Policy Period** . . . against such **Insured** for any **Wrongful Act**, and reported to the **Insurer**  in accordance with Section V. of the General Terms and Conditions and Section IV. of this Coverage Section.

---

[2] Capitalized and bold terms are defined in the Policy.

[3] The Policy defines "Application" to mean "all applications, including any attachments and other materials provided therewith or incorporated therein, submitted in connection with the underwriting of this Policy or for any other policy of which this Policy is a renewal, replacement or which it succeeds in time."  (JE 7, Policy, RE 44, Page ID # 1536, § II.A.).

14

(*Id.*, Page ID # 1563, § I.A.).  The EPL Coverage Section defines a Wrongful Act to include any actual or alleged Retaliation or Wrongful Employment Decision.  (*Id.*, Page ID # 1569, § II.V.).

Second, the D&O Coverage Section contains eleven Insuring Agreements ((A)–(K)).   Relevant here, Insuring Agreement E provides Regulatory Claims Coverage as follows:

> The **Insurer** shall pay on behalf of the **Insureds**, subject to the Sublimit of Liability set forth in Item 4.F. of the Declarations, the **Loss** arising from a **Claim**, first made during the **Policy Period** . . . against the **Insureds** for a **Regulatory Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.

(JE 7, Policy, Re 44, Page ID # 1546, § I.E.).  The D&O Coverage Section defines a Regulatory Wrongful Act to include any actual or alleged "act, error, omission, misstatement, misconduct, fraud, reckless disregard or negligence committed by an **Insured** in the performance of, or failure to perform, any of the following activities in the Medicaid, Medicare, Federal Employee Health Benefit or TriCare Programs: (a) procedure coding; (b) bill, claim, cost report or data submissions; or (c) the calculation of managed care payments."  (*Id.*, Page ID # 1554–1555, § II.W.(1)). The false billing allegations addressed by the CID and DOJ Investigation, as well as set forth in the Qui Tam Complaint, fall within the foregoing definition of a Regulatory Wrongful Act.

15

Both the EPL and D&O Coverage Sections define an Insured to include the Company, (JE 7, Policy, Re 44, Page ID # 1566, § II.K., # 1552, § II.M.), which, in turn, includes the Named Insured (i.e., SHH) and any Subsidiary of the Named Insured (i.e., Saber Healthcare Holdings and Saber Healthcare Group), (*id.*, Page ID # 1536, § II.B.). Further, both Coverage Sections define a Claim to include any "judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured** . . . , which is commenced by . . . service of a complaint or similar pleading; [or] . . . receipt or filing of a notice of charges." (*Id.*, Page ID # 1563–1564, § II.B.(2), # 1548, § II.C.(2)). In addition, the D&O Coverage Section's definition of a Claim also includes any "formal administrative or regulatory investigation of an **Insured**, which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying an **Insured** as a person or entity against whom a proceeding identified in paragraphs (2) or (3) above may be commenced." (*Id.*, Page ID # 1548–1549 § II.C.(5) (paragraph (2) identifies a "judicial, administrative or regulatory proceeding" and paragraph 3 identifies an "arbitration or mediation proceeding")). The Policy provides that "[a] **Claim** shall be deemed first made when any **Insured** first receives notice of the **Claim**." (*Id.*, Page ID # 1564, § II.B., # 1549, § II.C.). The CID and DOJ Investigation constitute a Claim as defined in the Policy's D&O Coverage Section because it involved a

regulatory investigation by the DOJ of SHH that was commenced by the CID, which identified SHH as an entity against whom an FCA action might be brought.

The EPL and D&O Coverage Sections have a $3 million shared limit of liability and in the aggregate, and a $250,000 sublimit applies to Regulatory Claims Coverage under the D&O Coverage Section. (JE 7, Policy, RE 44, Page ID # 1496, Item 4.A.–B.) The EPL Coverage Section has a $200,000 Retention, which applies to each and every EPL Claim. (*Id.*). It is the Insured's—not Allied World's—duty to defend any Claims under the EPL Coverage Section, (*id.*, Page ID # 1512), and Defense Costs are part of the limits of liability, (*id.*, Page ID # 1538, § III.F.).

### E.     SHH's Settlements with the Government and Relators

In August 2019, the Qui Tam Action was partially unsealed and SHH received a copy of the Qui Tam Complaint. (JSF, RE 39, Page ID # 1205, ¶ 9). However, as noted above, prior to that time, SHH had been working with the government on an on-going basis and had reached a settlement in principle regarding SHH's billing practices. (*Id.*, Page ID # 1205, ¶ 10). On September 11, 2019, SHH provided notice to Allied World of the Qui Tam Action, seeking coverage under the Policy's EPL Coverage Section for the retaliation component of that Action. (*Id.*, Page ID # 1205, ¶¶ 11–12). Allied World denied coverage based on the Application Exclusion. (*Id.*, Page ID # 1205, ¶¶ 13 & 16; JE 9, Oct. 10, 2019 Coverage Ltr., RE 44, Page ID # 1591–1600; JE 12, Nov. 13, 2019 Coverage Ltr., RE 44, Page ID # 1617–1620).

On March 30, 2020, SHH and the Relators reached a $2.2 million settlement related to the Relators' Retaliation Count in the Qui Tam Action.  (JSF, RE 39, Page ID # 1205, ¶ 17).  Concurrently, SHH, the Relators, and the government entered into a separate agreement settling the FCA Counts for $10 million.  (*Id.*, Page ID # 1205, ¶ 18).

## III.    Procedural History

After Allied World denied coverage for the Qui Tam Action, SHH commenced this coverage action on December 16, 2019.  (Compl., RE 1, Page ID # 1–8).  SHH's Complaint contained three counts: Count I for breach of contract, Count II for declaratory judgment, and Count III for breach of the duty of good faith and fair dealing.  (*Id.*, Page ID # 5–7).  The allegations in the Complaint were limited to coverage for the Qui Tam Action's Retaliation Count under the Policy's EPL Coverage Section.  (*Id.*, Page ID # 2, ¶ 3, # 4, ¶ 19, # 5, ¶ 24).  As damages, SHH sought to recover the $2.2 million settlement with the Relators, legal fees it incurred in connection with defending and settling the retaliation allegations, as well as fees it incurred in bringing this coverage action.  (*Id.*, Page ID # 5–6, ¶ 30, # 7).

In August 2020, the parties filed cross motions for summary judgment, with both parties seeking summary judgment on the breach of contract and declaratory judgment counts, and Allied World also seeking summary judgment on the bad faith count.  (AW's MSJ, RE 20, Page ID # 102–103; SHH's MSJ, RE 21, Page ID # 496–

497).  In connection with the District Court's consideration of the cross-motions, the parties agreed to submit joint stipulated facts and exhibits.  (JSF, RE 39, Page ID # 1203–1206; JE, RE 44, Page ID # 1225–1669).  On November 2, 2020, the District Court issued its Opinion & Order on the parties' cross-motions, granting summary judgment to SHH on its breach of contract and declaratory judgment counts, and to Allied World on the bad faith count.  (Opinion & Order, RE 46, Page ID # 1671–1685).  Following an unopposed motion for clarification, the District Court issued an amended summary judgment Opinion & Order on December 16, 2020.  (Opinion & Order, RE 48, Page ID # 1691–1705).

The parties then briefed the issue of damages.  (SHH's Br., RE 50, Page ID # 1710–1720; AW's Resp., Page ID # 1721–1772; SHH's Reply, Page ID # 1773–1783).  On September 28, 2021, the District Court entered its Opinion & Order on the disputed damages issues.  (Opinion & Order, RE 54, Page ID # 1792–1801).  The District Court awarded SHH $2 million in damages (representing the settlement minus the Policy's $200,000 Retention); $55,226.54 in defense costs incurred by SHH in defending against the retaliation allegations; $60,077.37 in pre-judgment interest; and post-judgment interest at the federal statutory rate.  (*Id.*, Page ID # 1800).  The District Court also determined that SHH was entitled to an award of its attorneys' fees for bringing this coverage action and, following SHH's submission of invoices, awarded SHH $221,482.44 in fees on October 8, 2021.  (Opinion &

Order, RE 56, Page Id # 1945).   Thus, the District Court awarded a total of $2,336,786.35 to SHH.

## IV.   Rulings on Appeal

Allied World appeals both the District Court's summary judgment orders as well as its damages orders.   First, Allied World appeals the District Court's November 2, 2020 Opinion & Order (RE 46, Page ID # 1671–1685) and December 16, 2020 amended Opinion & Order (RE 48, Page ID # 1691–1705), which granted summary judgment to SHH on its claims for breach of contract and declaratory judgment.   The District Court concluded that the Application Exclusion was ambiguous and did not preclude coverage for the retaliation component of the Qui Tam Action.   The District Court's finding of coverage was error in light of the plain language of the Policy's Application.

Second, Allied World appeals the District Court's September 28, 2021 Opinion & Order (RE 54, Page ID # 1792–1801) and October 8, 2021 Opinion & Order (RE 56, Page Id # 1945), which found, contrary to the American Rule, that SHH was entitled to an award of its attorneys' fees for prosecuting this coverage action against Allied World.   The cases relied upon by the District Court involved narrow exceptions to the American Rule not applicable here.   Those cases are distinguishable and the District Court's determination to award SHH its coverage action fees was error.

## SUMMARY OF THE ARGUMENT

The District Court improperly held that the Policy affords coverage for the retaliation component of the Qui Tam Action, including SHH's $2.2 million settlement with the Relators, and that SHH was entitled to an award of its attorneys' fees for bringing the instant coverage action.  In doing so, the District Court misapplied the plain language of the Application Questions and Exclusion, which serve to preclude coverage for existing inquiries, investigations, administrative charges, claims, and lawsuits, as well as such matters arising therefrom.  Here, when SHH applied for first-time coverage with Allied World, the Qui Tam Action had been pending for two years, and SHH was not only well aware of the CID and DOJ Investigation, but also that liability could follow therefrom. The existence of these matters when SHH submitted the Application for the Policy to Allied World is fatal to SHH's claim for coverage under the Policy.

The District Court couched its coverage determination as choosing between two reasonable interpretations of the Application Questions and Exclusion.  But SHH's interpretation, which the District Court adopted, is premised on an unreasonable reading of the Application Questions.  According to the District Court, it was reasonable for SHH to contend that the CID and DOJ Investigation were not responsive to the Questions because SHH was applying for EPL coverage and SHH did not understand that such coverage would apply to allegations of improper billing

practices or that a claim covered by the Policy would arise from the CID and DOJ Investigation.

Question No. 1 did not limit its scope to inquiries, investigations, administrative charges, claims, and lawsuits that the applicant believed could trigger particular coverage sections.  If Question No. 1 was intended to be so limited, it would have been worded like Question No. 2, which specifically asks for identification of any act, error, or omission which could trigger a claim, suit, or action under the proposed policy's coverage sections.  Rather, Question No. 1 is clearly and objectively broad in scope, and encompasses prior or existing matters regardless of the applicant's subjective understanding of potential coverage for those matters.  The CID and DOJ Investigation fall squarely within the scope of Question No. 1, which addresses matters initiated against the insureds proposed for coverage within the three years prior to policy issuance.  The Qui Tam Action, too, falls within those parameters, regardless of whether it was under seal.  (The exclusionary language in the Application for pre-existing disputes applies to matters inquired into in Question No. 1 regardless of whether the pending proceeding is disclosed in the Application.)

Similarly, the CID and DOJ Investigation, of which SHH admittedly was aware, also fall with the scope of Question No. 2 because they put SHH on notice of a wrongful act that could give rise to a claim under any coverage section of the Policy

(i.e., the D&O Coverage Section).  In fact, by the time SHH applied for coverage with Allied World, it had been working with the government for over two years in connection with the false billing allegations and, shortly thereafter, reached a settlement in principle.  Thus, because the unsealed Qui Tam Action arises from the CID and DOJ Investigation, and also because it existed when the Application was submitted, the Application Exclusion applies here.

Additionally, the District Court erred in determining that SHH was entitled to an award of its attorneys' fees incurred in prosecuting this coverage action.  The case law recognizes a limited exception in the duty-to-defend and indemnity agreement contexts, neither of which is present here. Therefore, the usual American Rule should apply.

This Court therefore should reverse the District Court's summary judgment in favor of SHH as well as its ruling awarding SHH its coverage action fees.

# ARGUMENT

## I.    The District Court's Erroneous Determination that Coverage Exists for the Qui Tam Action

### A.    Standard of Review

The District Court's grant of summary judgment is subject to *de novo* review, using the same standard under Rule 56(a) used by the District Court. *See Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).

Under Ohio law, insurance policies are contracts, the proper interpretation of which is a question of law for the court. *Allstate Ins. Co. v. Eyster*, 939 N.E.2d 1274, 1280 (Ohio Ct. App. 2010). "Contract terms are to be given their plain and ordinary meaning, and [w]hen the contract is clear and unambiguous, the court may look no further than the four corners of the insurance policy to find the intent of the parties." *Id.* "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co.*, 691 F.3d 821, 826 (6th Cir. 2012).

"Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008). However, an "[a]mbiguity does not arise merely because the parties interpret contractual provisions differently." *JNJ Logistics, L.L.C. v. Scottsdale Ins. Co.*, 617 F. App'x 464, 468 (6th Cir. 2015). "[I]t is equally well settled that a court cannot create ambiguity in a contract where there is none." *Lager*, 896 N.E.2d at

669.   Accordingly, "[w]hen the terms of an insurance policy are clear and unambiguous, Ohio law requires a court to apply [them] to the facts without engaging in any construction." *Toledo-Lucas Cnty. Port Auth. v. Axa Marine & Aviation Ins.*, 368 F.3d 524, 530 (6th Cir. 2004); *accord McCarty v. Nat'l Union Fire Ins. Co.*, 699 F. App'x 464, 467 (6th Cir. 2017) ("Where [the] terms are unambiguous, courts are not free to expand the contractual rights or obligations beyond that originally contemplated by the parties.").

"In the insurance context, the insurer customarily drafts the contract.  Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1262 (Ohio 2003).  However, that rule of construction only comes into play if the language is ambiguous, and "will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Id.*  Moreover, the rule of *contra proferentem* does not necessarily apply to a "sophisticated entit[y] represented by experienced brokers, all capable of bargaining with specificity and experience." *Cincinnati Gas & Elec. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, No. 1:06-CV-00331, 2008 U.S. Dist. LEXIS 29569, at *19–21 (S.D. Ohio Apr. 9, 2008); *accord Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 847 (6th Cir. 2013) (recognizing that "the 'contra proferentem' canon is meant primarily for cases where the written contract is standardized and between parties of unequal bargaining power"); *Westfield Ins. Co.*,

797 N.E.2d at 1262 (same). Here, the Application was submitted on a form of SHH's choosing, not Allied World's form, and SHH is a sophisticated entity that was represented by sophisticated brokers during the negotiation of the Policy.

### B. The Application Exclusion Bars All Coverage for the Qui Tam Action and the District Court Erred in Holding Otherwise

The Application Exclusion precludes all coverage under the Policy for the Qui Tam Action (including its Retaliation Count) because the Qui Tam Action not only arises from the CID and DOJ Investigation of which SHH undisputedly was aware at the time it submitted the Application to Allied World, but also because it is undisputed that the Qui Tam Action had been filed and pending for two and a-half years by the time the Application was submitted.

#### 1. The CID and DOJ Investigation Was Responsive to the Application Questions

The Application SHH submitted to Allied World in connection with the Policy contained two questions relevant here concerning recent and existing matters filed against the Applicant and matters that might give rise to a future claim against the Applicant under the Policy. Question No. 1 of the Claims Information section asked:

> On a separate attachment, please provide full details of all inquiries, investigations, administrative charges, claims and lawsuits filed within the last three (3) years against the Applicant, any Subsidiary, any Executive or other entity proposed for any coverage for which the Applicant is applying. If claims have been filed, please attach complete details regarding those matters including current status of claim and ultimate resolution of claim if applicable.

(JE 5, App., RE 44, Page ID # 1415).  In response, SHH indicated there were "none."
(*Id.*).

Questions No. 1 addresses inquiries, investigations, claims, and lawsuits filed within the 3 years prior to the Application against SHH or any other entity applying for coverage under the proposed policy.   As of the date of the Application (April 15, 2019), SHH was aware of the CID and DOJ Investigation and had been aware of them since January 20, 2017.  (JSF, RE 39, Page ID # 1204, ¶ 2).  Having been served with the CID and informed of the DOJ Investigation in January 2017, the CID and DOJ Investigation fell within the 3-year period covered by Question No. 1. Further, the CID and DOJ Investigation constitute an *inquiry* (the CID included interrogatories and document requests), an *investigation* (the CID expressly stated it was issued "in the course of a False Claims Act investigation"), and/or a *claim* (the D&O Coverage Section's definition of Claim includes a "formal administrative or regulatory investigation of an Insured") against the Applicant, i.e., SHH.  Thus, the CID and DOJ Investigation fell squarely within the scope of Question No. 1.

Additionally, Question No. 2 of the Claims Information section asked:

Does the Applicant, any Subsidiary, any Executive or other entity proposed for coverage know of any act, error or omission which could give rise to a claim, suit or action under any coverage part of the proposed policy?

(JE 5, App., RE 44, Page ID # 1416).  In response, SHH checked "no."  (*Id.*).

At the time SHH submitted the Application, it had knowledge "of any act, error or omission which could give rise to a claim, suit or action under any coverage part of the proposed policy." The CID provided SHH with knowledge of an act, error, or omission which could give rise to a claim, suit, or action as it expressly informed SHH that the DOJ was conducting a "a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729." (JSF, RE 39, Page ID # 1204, ¶ 2). The CID further provided that the DOJ was investigating "allegations that [SHH] . . . caused the submission of false claims for rehabilitation therapy . . . ." (*Id.*). Although SHH responded to the CID in July 2017, SHH continued to work with the government during the period leading up to submission of the Application (and after). (JSF, RE 39, Page ID # 1205, ¶¶ 9–10).

SHH's financials during this period (dated May 30, 2018) addressed the CID and reveal that SHH was aware the CID could lead to liability.

> In January 2017, the Company received a Civil Investigative Demand (the "CID") from the United States Department of Justice (the "DOJ") regarding an investigation to determine whether there is or has been a violation of the False Claims Act, 31 U.S.C. §3729, for the submission of false claims for rehabilitation therapy that was not medically reasonable or necessary, not skilled, or not actually provided. The CID requires the Company to provide documents and answers to the interrogatories of the DOJ. The Company is in the process of providing the requested documents and answers to the DOJ's interrogatories. Although Company management believes an accrual for any potential liability in its combined financial statements is not necessary, the ultimate liability may be in excess of management's estimate. These estimates are subject to potential revisions and those revisions *may be material*.

28

(JE 6, SHH's Financial Statements, RE 44, Page ID # 1458, § 13 (emphasis added)).

Further, by August 2019—little over four months from submitting the Application

to Allied World—SHH had reached a settlement in principle with the government

regarding SHH's improper billing practices at the core of the Qui Tam Action (which

settlement, once finalized, required SHH to pay $10 million). (JSF, RE 39, Page ID

# 1205, ¶¶ 9–10 & 18). Therefore, as demonstrated by its own financials and on-

going negotiations with the DOJ, SHH realized that the CID and DOJ Investigation

could result in material losses.

Finally, the allegations of improper billing submissions to the government

could give rise to a future claim, suit, or action under the Policy's D&O Coverage

Section. That Coverage Section specifically includes Regulatory Claims Coverage,

which provides coverage for regulatory investigations as well as regulatory and

judicial proceedings against an Insured for Regulatory Wrongful Acts, i.e.,

wrongdoing in the performance of Medicare billing submissions. Thus, the CID and

DOJ Investigation also fell squarely within the scope of Question No. 2.

### 2. The District Court's Interpretation of the Application Questions Was Not Reasonable

Notwithstanding the clear language of the Application Questions, the District

Court found that SHH reasonably could read Question Nos. 1 and 2 to not require

disclosure of the CID. As to Question No. 1, the District Court found that the phrase

"proposed for any coverage for which the Applicant is applying" did not apply to

the nearest referent, i.e., "the Applicant, any Subsidiary, any Executive or other entity," but rather modified the Question in its entirety. (Opinion & Order, RE 48, Page ID # 1700–1701). The District Court found that a plain reading of Question No. 1 would leave the "all inquiries, investigations, administrative charges," etc. noun string unqualified, and would require disclosure of matters unrelated to the issuing policy, such as requiring an SHH executive to disclose a zoning citation for an unpermitted shed on his property. (*Id.*, Page ID # 1701). The District Court also found that, at the time the Application was submitted, SHH had largely resolved the improper billing claim and SHH could never obtain claims-made coverage for it under the D&O Coverage Part. (*Id.*). Accordingly, the District Court adopted SHH's result-oriented view that SHH was required to disclose only those matters related to the EPL coverage for which coverage might apply. (*Id.*).

But this strained view of Question No. 1 does a disservice to the plain language used and relies upon inapt hypothetical scenarios not at all similar to the facts here. Question No. 1 is an objective question that addresses all types of matters that have been brought against any potential insureds proposed for coverage under the policy being negotiated. An insurance company underwriting a policy wants to know of matters that have been brought against an individual or entity proposed for coverage as they assess underwriting a potential future risk, and the question is not confined to one type of coverage. *See US HF Cellular Commc'ns, L.L.C. v.*

30

*Scottsdale Ins. Co.*, 776 F. App'x 275, 286 (6th Cir. 2019) (finding that the "contours of the prior litigation question's scope make sense because they home in on the type of information that would be relevant to an insurance company's decision of whether to issue a D&O policy"). This is not surprising because, as this case demonstrates, a pre-existing dispute under one coverage section (e.g., D&O) can lead to future claims under different coverage sections of a policy (e.g, EPL or FL). And certainly, while an insurance company is in the business of accepting risk, especially under a claims-made policy, an insurer is entitled to exclude from coverage claims arising from pre-existing disputes, whether or not the insured discloses them on the application. Allied World clearly did this through the Application Questions and the Application Exclusion.

The District Court's concern involving reporting matters wholly unrelated to the coverage being applied for, such as a private zoning citation against an SHH executive, is a red herring. No one is contending that Question No. 1 applies to matters wholly unrelated to an Insured's activities in an insured capacity, and it is difficult to conceive of how such a matter could ever lead to a claim under the Policy being underwritten. The District Court created this purported dilemma out of whole cloth. However, in determining whether a policy provision is ambiguous, the court must examine it in the context of the specific facts of the case; not in the context of a hypothetical scenario not before the court. *See Thomas Noe, Inc. v. Homestead*

*Ins. Co.*, 173 F.3d 581, 583 (6th Cir. 1999) (finding that "*[i]n its application to the facts before us*, the language of [the exclusion] is simply not ambiguous -- and the language must be applied in accordance with its terms" (emphasis added)); *Longaberger Co. v. U.S. Fid. & Guar. Co.*, 31 F. Supp. 2d 595, 602 (S.D. Ohio 1998) (recognizing that "[u]nder Ohio law an exclusion clause can be unambiguous when applied to certain facts but ambiguous when applied to other facts").

Here, the District Court was not presented with some tangential matter brought against an SHH executive or employee in their personal capacity (unrelated to SHH) as the District Court hypothesized. Instead, the District Court was presented with a government investigation against SHH itself for wrongdoing in connection with its core business managing and operating nursing facilities. It is difficult to conceive a more material matter to be disclosed than a pending governmental inquiry into alleged violations of federal law by the applicant in the operation of the very business it seeks to insure. Under the actual facts of *this case*, there is no ambiguity in Question No. 1 and the District Court erred in otherwise creating one. *See Lager*, 896 N.E.2d at 669 (recognizing that "a court cannot create an ambiguity in a contract where there is none").

The District Court's interpretation of Question No. 1 also impermissibly engrafted upon the Question a subjective component, looking to what the Applicant subjectively believes might fall within the Policy's EPL Coverage Section. The

Question's language, however, is *objective*, and the Court's interpretation effectively gives the Applicant the ability to pick and choose what to report based upon what the Applicant thinks might be covered under the Policy. But, for purposes of the Question, it is irrelevant whether, at the time the Application was submitted, SHH had largely resolved the improper billing allegations and that such a pre-existing matter would not be afforded coverage under the D&O Coverage Section. The CID and DOJ Investigation had been on-going in the three years leading up to the Application's submission and was required to be disclosed.

As to Question No. 2, the District Court determined that it did not require disclosure of the CID because SHH did not intend to seek coverage for the DOJ Investigation and, in any event, any request for coverage under the Policy would have been barred given its claims-made nature. (Opinion & Order, RE 48, Page ID # 1702). As with Question No. 1, the District Court's interpretation is unsupported by the express language. Question No. 2 does not ask whether the Applicant intends to seek coverage for a potential future claim, suit, or action, or if the Applicant believes such a future claim, suit, or action would be covered. Rather, it asks whether the Applicant knows of "any act, error or omission which could give rise to a claim, suit or action under any coverage part of the proposed policy." As discussed above, the CID clearly could and did give rise to a claim, suit, or action under the Policy. Whether that matter would be covered is a different story, but that is not

33

what the language of Question No. 2 asks. The District Court's interpretation of Question No. 2 was not reasonable. (Again, as expanded upon below, the inquiry here is not whether SHH actively concealed anything, but whether the loss for which SHH now seeks coverage falls within the description of pre-existing matters excluded from coverage regardless of disclosure).

### 3. The Application Exclusion Precludes Coverage for the Qui Tam Action

The Application's Claims Information section concludes with the Application Exclusion, which provides that with respect to Question Nos. 1 through 3:

> if such inquiry(ies), investigation(s), . . . claim(s), lawsuit(s), information or involvement <u>exists</u>, then such inquiry(ies), investigation(s), . . . claim(s), lawsuit(s) and any inquiry, investigation, . . . claim or lawsuit arising therefrom or arising from such violation, knowledge, information or involvement is excluded from the proposed coverage.

(JE 5, App., RE 44, Page ID # 1416 (emphasis added)). Because the CID and DOJ Investigation fall within the scope of the information sought in both Question Nos. 1 and 2, the Application Exclusion applies to exclude coverage for the associated and overlapping Qui Tam Action Claim.

Here, the Qui Tam Action, which notified the DOJ of the potential False Claims Act violations, was filed under seal in November 2016 and precipitated the CID and DOJ Investigation into SHH. Following the DOJ Investigation, the Qui Tam Action was partially unsealed in August 2019, at which point SHH received

notice of the Qui Tam Action and it became the Claim for which coverage was

sought.[4]  As such, the Qui Tam Action arose from the CID and DOJ Investigation.[5]

Moreover, the Qui Tam Action is itself directly excluded by the Application

Exclusion as a pre-existing lawsuit filed within three years of the Application.

Specifically, the Relators filed the Qui Tam Action against SHH on November 1,

---

[4] The Policy provides that "[a] Claim shall be deemed first made when any **Insured** first receives notice of the **Claim**." (JE 7, Policy, RE 44, Page Id # 1564, § II.B).

[5] There are many cases in which courts have applied application exclusions to preclude coverage in situations that are instructive here.  *See, e.g.*, *US HF Cellular Commc'ns, L.L.C.*, 776 F. App'x at 290 (finding that application exclusion, which requested information regarding claims within the last three years, barred coverage for lawsuit even though complaint on-file at the time the application was submitted did not specifically name the insured company); *Hale v. Travelers Cas. & Sur. Co. of Am.*, No. 3-14-1987, 2015 U.S. Dist. LEXIS 149687, at *10–13 (M.D. Tenn. Nov. 4, 2015), *aff'd*, 661 F. App'x 345 (6th Cir. 2016) (finding that application exclusion barred coverage for claim related to matters of which insured was aware prior to policy's inception and failed to disclose on application); *Alterra Excess & Surplus Ins. Co. v. Gotama Bldg. Eng'rs, Inc.*, No. CV 14-2969-JFW (ASx), 2014 U.S. Dist. LEXIS 110416, at *18–20 (C.D. Cal. July 24, 2014) (finding that application exclusion was unambiguous and barred coverage for later filed lawsuit that arose from demand letter that insured failed to disclose on its application); *Upper Deck Co. v. Endurance Am. Specialty Ins. Co.*, No. 10cv1032, 2011 U.S. Dist. LEXIS 148668, at *14–17 (S.D. Cal. Dec. 15, 2011) (finding that application exclusion would apply to insured who failed to disclose claim even though it had not been named in lawsuit at time application was submitted); *Gluck v. Exec. Risk Indem., Inc.*, 680 F. Supp. 2d 406, 419 (E.D.N.Y. 2010) (determining that "[application] exclusion plainly eliminates coverage for claims arising from those facts, etc. 'required to be disclosed' that are not actually disclosed in response to the specified questions"); *Crown Capital Secs., L.P. v. Endurance Am. Specialty Ins. Co.*, 186 Cal. Rptr. 3d 1, 7–8 (2015) (holding that application exclusion barred coverage for arbitrations filed after policy incepted because insured was aware of facts that may give rise to those claims and failed to report them on its application).

2016, within three years of the April 15, 2019 Application. The absence of coverage arises not because SHH failed to disclose the Qui Tam Action, but because the lawsuit "existed" at the time of the Application. ("[I]f such . . . lawsuit(s) . . . **exists**, . . . then such . . . lawsuit(s) . . . is excluded from the proposed coverage." (emphasis added)). *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). The Application Exclusion applies on its face to disclosed and undisclosed matters described in Question No. 1, and the Application itself further supports that plain reading.[6] (JE 5, App., RE 39, Page ID # 1416, 1424 (stating that "if any fact, circumstance or situation exists, whether or not disclosed in this application, any claim or action arising from any such fact, circumstance or situation may be excluded from coverage under the proposed policy")).

The case law supports Allied World's position. *See, e.g.*, *HR Acq. I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309, 1317–19 (11th Cir. 2008) (finding that prior litigation exclusion barred coverage for post-policy period suit related to pre-policy period qui tam action because the qui tam action "existed" for purposes of the exclusion); *AmerisourceBergen Corp. v. Ace Am. Ins. Co.*, 100 A.3d 283, 286–88

---

[6] To hold otherwise would mean that an Insured could manipulate coverage for a pre-existing matter by the simple act of failing to disclose it on the Application. *See, e.g.*, *KitBar Enters., L.L.C. v. Liberty Ins. Underwriters, Inc.*, 291 F. Supp. 3d 758, 765–66 (E.D. Va. 2018) (finding that plain language of application exclusion barred coverage for pre-existing complaint, and noting that "[the insured] was seeking to insure against a risk that had already materialized, precisely the kind of risk insurers . . . seek to exclude from coverage").

(Pa. Super. Ct. 2014) (holding that prior or pending exclusion barred coverage for quit tam action that was pending under seal and of which the insured was unaware at the time the policy incepted).

Relying on its misplaced reading of the Application Questions, the District Court determined that the Application Exclusion could not apply to the Qui Tam Action as an "existing" lawsuit because it was not responsive to either Question. (Opinion & Order, RE 48, Page ID # 1703–1704). But that is incorrect when the Application Exclusion is given its natural reading. As discussed above, the Qui Tam Action is responsive to Question No. 1 as a lawsuit filed within the three years preceding the Application. Under the District Court's interpretation, the Application Exclusion would only apply if the Applicant unilaterally chose to disclose a matter in response to Question Nos. 1 or 2. That is not a reasonable interpretation of the Application Questions or Exclusion and, as such, the District Court's finding in favor of SHH on the issue of coverage was error and should be reversed.

## II.    The District Court's Erroneous Award of SHH's Coverage Action Fees

### A.    Standard of Review

The District Court's decision to award SHH the fees it incurred in prosecuting this coverage action against Allied World involves an issue of state law and is reviewed *de novo*. *See Hometown Folks, L.L.C. v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011) ("In diversity cases, attorneys' fees are governed by state law.");

*Lawler v. Fireman's Fund Ins. Co.*, 322 F.3d 900, 903 (6th Cir. 2003) (recognizing that "the district court's determination of state law presents a purely legal question, which we review de novo"); *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 528 (6th Cir. 2002) (same). The District Court erred in its determination because the case law it relied upon involves the duty to defend, which the Policy does not require of Allied World, or distinguishable indemnitee agreements, which are not at issue here. (Opinion & Order, RE 54, Page ID # 1796–1799). This Court therefore should reverse the District Court's fee award.

### B.    Ohio Law Does Not Permit a Fee Award to SHH

"Ohio follows the 'American rule' with respect to attorney fee awards." *Guernsey Bank v. Milano Sports Enters., L.L.C.*, 2011-Ohio-2162, ¶ 68 (Ohio Ct. App. 2011) ("Under this rule, each party involved in litigation pays his or her own attorney fees in most circumstances."). While Ohio has recognized a limited exception for when an insurer breaches its duty to defend, that exception is inapplicable here. Under the Policy, "[i]t shall be the obligation of the **Insured(s)** to defend and contest any **Claim** made against them." (JE 7, Policy, RE 44, Page ID # 1512). Allied World does not have a duty to defend; rather it owes a duty to reimburse Defense Costs. "At the request of the **Named Insured**, the **Insurer** shall reimburse **Defense Costs** prior to the final disposition of any **Claim**, subject to all other terms and conditions of this Policy." (*Id.,* Page ID # 1513).

One of the leading cases on this point is *Motorists Mut. Ins. Co. v. Trainor*, 294 N.E.2d 874, 876 (Ohio 1973), which involved a duty to defend policy requiring that "the [insurer] shall defend any suit against the insured alleging such bodily injury." There, the Supreme Court of Ohio found that where an insurer wrongfully refuses to defend its insured, the insured is entitled to recover its fees incurred in defending against both the underlying action as well as the insurer's coverage action. *See id.* at 878. Similarly, in *Allen v. Standard Oil Co.*, 443 N.E.2d 497, 500 (Ohio 1982), the Supreme Court of Ohio addressed an indemnity agreement that required the indemnitor to "indemnify, save harmless, and defend" the indemnitee, and found that the indemnitor's failure to defend made it liable for the fees incurred by the indemnitee in vindicating its rights.

In *Pasco v. State Auto. Mut. Ins. Co.*, 2005-Ohio-2387, ¶¶ 14–15 (Ohio Ct. App. 2005), the court recognized that *Trainor* and *Allen* are limited in context to "a party who was contractually obligated to defend another party," and that those cases do not extend to a breach of a duty to indemnify an insured. Instead, under Ohio law, when the duty to indemnify or payment of a claim is at issue, an insured is not entitled to recover attorneys' fees when it is successful in establishing coverage. *See, e.g.*, *B-T Dissolution, Inc. v. Provident Life & Accident Ins. Co.*, 192 F. App'x 444, 445–47 (6th Cir. 2006). Under the Allied World Policy, the Insured has the duty to defend itself and its entitlement to the payment of covered defense costs is a matter

of indemnity. Therefore, *Trainor* and its progeny are inapplicable and do not entitle SHH to an award of its coverage action fees. *See Excellence in Motivation v. Navigators Ins. Co.*, No. 3:10-cv-420, 2011 U.S. Dist. LEXIS 172415, at *19 (S.D. Ohio Oct. 17, 2011) (addressing policy that required insurer to advance defense costs and finding that it was distinguishable from the policy addressed in Trainor).

While acknowledging the limitations of the *Trainor* and *Allen* cases, the District Court found that other more recent decisions in the indemnity context were applicable and mandated an award of attorneys' fees. First, the District Court cited to *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253 (Ohio 1987), in which the Supreme Court of Ohio addressed an indemnity agreement and not a duty to defend. But the indemnity agreement at issue in *Worth* authorized the executives (the indemnitees) of a company to retain legal counsel and to be held harmless and made whole for costs incurred if the employer (the indemnitor) failed to honor its contractual commitments, necessitating legal action by the executives. *See id.* at 256–57 ("We can see no reason why an indemnity agreement which expressly allows for the recovery of attorney fees should be treated any differently from the indemnity agreement in Allen which did not expressly allow for the recovery of such expenses, but which was, nevertheless, held to allow for such recovery."). Thus, the contractual language of the indemnity agreement itself called for the awarding of fees. *See Scott Fetzer Co. v. Zurich Am. Ins. Co.*, No. 1:16 CV 1570, 2021 U.S. Dist.

LEXIS 55961, at *18 (N.D. Ohio Mar. 24, 2021) ("Unlike the situation in *Worth*, the insurance contract at issue here does not have any provision that expressly requires the reimbursement of legal expenses, thus Worth is not relevant.").

The District Court's reliance on *Bank One, N.A. v. Echo Acceptance Corp.*, 380 F. App'x 513 (6th Cir. 2010), in further support of its position that a duty to defend is not necessary in the indemnity context, also was misplaced. There too, like in *Worth*, this Court addressed agreements that contained fee-shifting provisions, which contractually entitled the plaintiff to recover its attorneys' fees if it had to enforce its indemnity rights. *See id.* at 525–26. Not surprisingly, the lack of a duty to defend in that context was not fatal to the fee claim.

Finally, there is a reason that Ohio law affords special protection—in the form of fee shifting—for an insured that establishes that its insurer, unlike here, breached an actual duty to defend. The undertaking to provide a defense to the insured is a special undertaking to provide a critical service when an insured is sued in addition to the undertaking to pay covered losses (i.e., settlements and judgments) for which the insured becomes liable. As one court has explained:

> [T]he insured would reasonably expect a defense by the insurer in all personal injury actions against him. If he is to be required to finance his own defense and then, only if successful, hold the insurer to its promise by means of a second suit for reimbursement, we defeat the basic reason for the purchase of the insurance. In purchasing his insurance the insured would reasonably expect that he would stand a better chance of vindication if supported by the resources and expertise of his insurer than if compelled to handle and finance the presentation

> of his case. He would, moreover, expect to be able to avoid the time, uncertainty and capital outlay in finding and retaining an attorney of his own. The courts will not sanction a construction of the insurer's language that will defeat the very purpose or object of the insurance.

*Gray v. Zurich Ins. Co.*, 419 P.2d 168, 178 (Cal. 1966). Ohio courts also have recognized that an insurer's duty to defend is a valuable right and of great importance to the insured. *See Erie Ins. Exch. v. Colony Dev. Corp.*, 736 N.E.2d 941, 946 (Ohio Ct. App. 1999); *Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19, 23 (Ohio 1994). Due to the special benefits a duty to defend provides, when a breach of that duty occurs, courts have permitted fee shifting. *See Motorists Mut. Ins. Co.*, 294 N.E.2d at 878 (recognizing that insureds had "the right to a prompt and diligent defense under th[eir] contract," and should be placed in a position as good as if the insurer had performed its duty to defend). That same rationale (and rule) is inapplicable when, as here, the policy does not include a duty to defend.

Accordingly, the District Court erred when it awarded SHH its coverage action fees below.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, the Court should reverse the District Court's summary judgment ruling finding coverage in favor of SHH. Alternatively, to the extent the Court affirms the District Court's summary judgment coverage ruling, the Court nevertheless should reverse the District Court's damages determination awarding SHH its coverage action fees.

Dated: September 21, 2022                    Respectfully submitted,


 /s/ Charles W. Chotvacs
Charles W. Chotvacs
DYKEMA GOSSETT PLLC
1301 K Street, N.W., Suite 1100 West
Washington, D.C.  20005
Telephone: (202) 906-8600
CChotvacs@dykema.com

   – and –

 /s/ Monica A. Sansalone
Monica A. Sansalone
GALLAGHER SHARP LLP
1215 Superior Avenue, 7th Floor
Cleveland, OH  44114
Telephone: (216) 241-5310
msansalone@gallaghersharp.com

*Counsel for Defendant-Appellant*
*Allied World Specialty Insurance*
*Company*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation provided in Federal Rule of Appellate Procedure 32(a)(7)(B)(i).  The foregoing brief contains 10,614 words of Time New Roman (14 pt) proportional type.  Microsoft Word is the word-processing software that was used to prepare the brief.

/s/ Charles W. Chotvacs
Charles W. Chotvacs

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of September, 2022, the foregoing Principal Brief of Defendant-Appellant Allied World Specialty Insurance Company was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the Court's CM/ECF filing system. All participants in the case are registered CM/ECF users and service upon the following counsel for Plaintiff-Appellee SHH Holdings, LLC will be accomplished by the CM/ECF system.

Michael P. O'Donnell
David Sporar
BROUSE McDOWELL, LPA
600 Superior Avenue, East, Suite 1600
Cleveland, OH  44114
modonell@brouse.com
dsporar@brouse.com

  /s/ Charles W. Chotvacs
Charles W. Chotvacs

**ADDENDUM**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

Pursuant to Sixth Circuit Rules 28(b)(1)(A)(i) and 30(g)(1), Defendant-Appellant Allied World Specialty Insurance Company designates the following documents from the District Court's docket as relevant to this appeal:

| Record Entry | Document Description | Date Filed | Page ID # |
|---|---|---|---|
| 1 | SHH's Complaint for Breach of Contract, Declaratory Judgment, and Bad Faith | 12/16/19 | 1–8 |
| 8 | Allied World's Answer to Complaint | 2/24/20 | 23–38 |
| 20 | Allied World's Motion for Summary Judgment | 8/24/20 | 102–104 |
| 21 | SHH's Motion for Partial Summary Judgment | 8/24/20 | 496–497 |
| 39 | Parties' Joint Stipulation of Facts | 10/15/20 | 1203–1206 |
| 44 | Parties' Joint Exhibits ("JE") | 10/21/20 | 1225–1669 |
| 44 | Qui Tam Complaint (JE 1) | 10/21/20 | 1229–1333 |
| 44 | Civil Investigative Demand ("CID") (JE 2) | 10/21/20 | 1335–1361 |
| 44 | SHH's Discovery Responses (JE 3) | 10/21/20 | 1363–1389 |
| 44 | SHH's Responses to CID (JE 4) | 10/21/20 | 1391–1412 |
| 44 | Insurance Application (JE 5) | 10/21/20 | 1414–1428 |
| 44 | SHH's Financial Statements (JE 6) | 10/21/20 | 1430–1488 |
| 44 | Allied World Policy (JE 7) | 10/21/20 | 1490–1586 |
| 44 | Oct. 10, 2019 Coverage Letter (JE 9) | 10/21/20 | 1591–1600 |
| 44 | Nov. 13, 2019 Coverage Letter (JE 12) | 10/21/20 | 1617–1620 |
| 46 | Summary Judgment Opinion & Order | 11/2/20 | 1671–1685 |
| 48 | Amended Summary Judgment Opinion & Order | 12/16/20 | 1691–1705 |
| 49 | Notice of Outstanding Issues and Request for Briefing and Hearing | 1/29/21 | 1706–1709 |
| 50 | SHH's Damages Brief | 3/1/21 | 1710–1720 |
| 51 | Allied World's Damages Response Brief | 3/22/21 | 1721–1772 |
| 52 | SHH's Damages Reply Brief | 3/29/21 | 1773–1783 |
| 54 | Opinion & Order Awarding Damages | 9/28/21 | 1792–1801 |

| Record Entry | Document Description | Date Filed | Page ID # |
|---|---|---|---|
| 56 | Opinion & Order Awarding Attorneys' Fees | 10/8/21 | 1945 |
| 57 | Notice of Appeal | 3/25/22 | 1946–1948 |